IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE WITH ASSIGNED CALL NUMBER 423-580-3890 (TT2) | Case No. 1:19-mj-28<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

This Affiant, Adam Baldwin, Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being duly sworn, states the following:

### INTRODUCTION AND AGENT BACKGROUND

1. I, Adam Baldwin, am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since August 2014. In addition to my employment with ATF, I have over three years of law enforcement experience with the Pentagon Force Protection Agency (PFPA). During my tenure with PFPA, I served two years as a police officer in multiple capacities, to include patrol, surveillance detection, and as a law enforcement liaison to the Director of PFPA. I additionally served approximately one year as a special agent with PFPA, conducting complex criminal and protective intelligence investigations, as well as conducting domestic and international protective missions. I am a graduate of the Federal Law Enforcement Training Center (FLETC) Uniformed Police Training Program (UPTP), Criminal Investigator Training Program (CITP), and the ATF Special Agent Basic Training (SABT) Program. I have received specialized training with

1

respect to narcotics and firearms violations and have been involved in numerous investigations involving violent crimes and the seizure of firearms and controlled substances. I also have a Bachelor of Science in Criminal Justice from East Tennessee State University, and a Master of Science in Criminal Justice from The University of Tennessee at Chattanooga.

2. This affidavit is submitted in support of an application for a search and seizure warrant for information associated with certain accounts that are stored at premises owned, maintained, controlled, or operated by AT&T, a wireless provider headquartered at 11760 US Highway 1, North Palm Beach, FL. The information to be searched is described herein and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), using the procedures described in Rule 41 of the Federal Rules of Criminal Procedure, to require AT&T to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the account, including the contents of communications. The information contained in this affidavit has been obtained through observations by your Affiant, as well as from interviews with fellow law enforcement officers, and an ATF Confidential Informant (CI), and Cooperating Defendant. Not every fact known to your Affiant regarding the case has been included in the affidavit. Your Affiant has only included information and facts needed for the court to make a finding of probable cause.

3. Based upon your Affiant's training and experience and participation in investigations involving controlled substances, your Affiant knows that when controlled substances are illegally used, manufactured, and trafficked, other supporting items and materials are usually present in addition to the controlled substances themselves. These supporting items commonly associated with the use of and trafficking of controlled substances include, but are not limited

to, drug paraphernalia, scales, and packaging materials suitable for particular substance(s); records and notes (including computer and electronically stored) of controlled substance transactions; money (proceeds of or capital for controlled substance(s) transactions); firearms kept for protection; stolen property (often traded for controlled substances); electronic devices suitable for use in controlled substance transactions, recordings of such transactions, or electronic devices suitable for avoiding law enforcement.

4. It is also common for traffickers of these substances to use electronic communication devices such as cellular telephones, pagers, both numeric and two-way, and computers so that they can conduct their business at virtually any time without unnecessary delay. Your Affiant knows that these devices are usually found on or in very close proximity to these persons and that such electronic devices are capable of storing information such as phone numbers and/or coded messages which may lead to the identity of codefendants, coconspirators, and/or sources of supply. Cellular phones, phone records, device purchase agreements and other related documents related to the ownership are normally kept at their businesses, and/or places of operation. It is also common for them keep their electronic communication devices and cellular telephones in close proximity to themselves, on their person, in their vehicles, or at their business or place of operation. Cellular telephones, in addition to being communication devices, are also storage devices for data. Data electronically stored inside cellular telephones include telephone numbers of associates, logs of the date and time that individual calls were made, voice and text messages from associates and photographs of the primary user, family members and associates, location information, internet browsing history, calendar entries, task lists, contact information, and other similar data. The data inside cellular telephones is evidence of such sales activity, demonstrates true ownership and control of the telephones,

3

which can be registered to another person, and can be effectively used to corroborate the statements of witnesses. With the advent of "smart phones" all of the documents and information discussed within this section can be held on a smart phone in electronic format as well.

5. Based on training and experience in conducting investigations involving controlled substances, your Affiant also knows that drug dealers, while utilizing electronic communication devices to conduct their business, will often use "slang," or "code words" when referring to their business activities. These code words may include reference to, but are not limited to, money, narcotics, other co-conspirators, and certain locations. Drug dealers use these code words in an attempt to conceal their illegal activities from law enforcement in an effort to avoid detection. Your Affiant is also aware that specific slang and code words utilized by those trafficking in controlled substances may be influenced by various factors such as geographical area, cultural influences, and the type of controlled substance being trafficked.

6. Based on your Affiant's training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21 USC § 841(a)(1) and Title 26 USC § 846 have been committed by Jason JOHNSON, AKA "Boss P," (hereinafter JOHNSON) and other known and unknown co-conspirators. There is also probable cause to search the information described in Attachment A for evidence of these crimes as described in Attachment B.

## PROBABLE CAUSE

7. Your Affiant is currently participating in an investigation of an armed drug trafficking organization (ADTO) in the Eastern District of Tennessee (EDTN). An investigation conducted by the ATF has identified several individuals as operating in the EDTN, and as

4

being involved in a conspiracy to distribute large quantities of methamphetamine (meth) and the illegal possession and use of firearms during narcotics-related activity. One of the co-conspirators and sources of supply for meth involved in the investigation, JOHNSON, has further been identified as using cellular devices to arrange narcotics transactions. The investigation was initiated by the development of information given by an ATF Confidential Informant (CI), as well as co-conspirators in the investigation. The information provided the by CI and the co-conspirators has been independently corroborated by other agents/officers as accurate. Such information has been corroborated through records analysis, surveillance conducted by your Affiant and other law enforcement officers, as well as review of historical case information. Accordingly, your Affiant submits that information provided is reliable.

8. On or about January 14, 2019, your Affiant, with the assistance of East Ridge Police Department (ERPD) Detectives, conducted a custodial interview of Patrick LAWRENCE, AKA "Lowrance," (hereinafter LAWRENCE). LAWRENCE had previously been identified in December 2018 by an ATF CI as a large-scale distributor of methamphetamine in the EDTN. During the interview, LAWRENCE admitted distributing large quantities of methamphetamine. LAWRENCE also identified one of his sources of supply for methamphetamine as Jason JOHNSON, AKA "Boss P," (hereinafter JOHNSON). According to LAWRENCE, he was last supplied a resale amount of methamphetamine by JOHNSON the previous evening, January 13, 2019. LAWRENCE additionally confirmed that JOHNSON will frequently utilize cell phones, specifically telephone number 423-314-8442 (hereinafter TT1), via voice calls and text messages, to orchestrate methamphetamine transactions. LAWRENCE continued that while JOHNSON does text, if LAWRENCE arranges a drug deal with JOHNSON via text, JOHNSON will sometimes respond via voice call as opposed to text

5

message. LAWRENCE also confirmed to your Affiant that he arranged the aforementioned drug deal with JOHNSON on January 13, 2019, via TT1 by both text message and voice calls.

9. LAWRENCE additionally provided your Affiant written and verbal consent to view his cellular device. A review of the call logs and text message logs for LAWRENCE's phone corroborated LAWRENCE's statements regarding JOHNSON's involvement in the distribution of methamphetamine. Specifically, your Affiant viewed several text messages sent to TT1 from LAWRENCE between January 8, 2019 and January 13, 2019, which, according to LAWRENCE, were in reference to methamphetamine purchases from JOHNSON. The messages are as follows:



10. Your Affiant knows, based on training and experience, as well as information obtained throughout the course of the investigation, to include statements by LAWRENCE, that

6

LAWRENCE's reference to needing a "half" in a text message to TT1 on January 8, 2019, was in reference to a half-ounce of methamphetamine.

11. In addition to the review of the text message logs, your Affiant also reviewed LAWRENCE's incoming and outgoing call log with TT1. The following is an excerpt from the call log:



12. During the review of the call log, your Affiant viewed numerous incoming and outgoing calls exchanged between LAWRENCE and TT1 on January 13, 2019. When asked about the call logs, LAWRENCE confirmed to your Affiant that the calls were in reference to orchestrating the aforementioned drug deal with JOHNSON on January 13, 2019.

13. In addition to the aforementioned investigative techniques, JOHNSON, a convicted felon, is known by other law enforcement agencies operating in the EDTN to be a large-scale

7

distributor of methamphetamine and frequently be in possession of firearms. Specifically, JOHNSON is currently under indictment for violations of State of Tennessee narcotics and firearms laws stemming from a State search warrant at a residence associated with JOHNSON in McMinn County, TN. During the execution of the warrant, law enforcement recovered a large quantity of methamphetamine consist with resale from the property.

14. On January 24, 2019, your Affiant applied for and was granted a search warrant for GPS location information for TT1. The search warrant was submitted to the wireless provider for TT1 that day, and your Affiant subsequently began receiving GPS location information for TT1 on January 25, 2019.

15. Between January 25, 2019 and February 18, 2019, Your Affiant, with the assistance of other law enforcement officers, has utilized various surveillance techniques, to include fixed and mobile surveillance, in conjunction with the GPS location information for TT1 to conduct surveillance on JOHNSON. The surveillance was conducted in an attempt to determine JOHNSON's patterns of activity regarding narcotics trafficking, as well as identify additional co-conspirators of JOHNSON's involved in the distribution of narcotics.

16. During the surveillance period, your Affiant observed JOHNSON meeting with unknown individuals at various locations, to include residences and businesses known to be associated with known drug dealers and co-conspirators in this investigation. During such meetings, JOHNSON was observed frequently talking on a cellular device immediately prior to and following the meetings. The meetings were short in length, typically ranging from several seconds to less than five minutes. Your affiant knows, through training and experience, that such activity is consistent with narcotics distribution, as drug dealers will frequently meet at predetermined locations for a brief amount of time in order to conduct narcotics transactions.

Drug traffickers will also commonly utilize cellular devices to arrange such meetings. The observations were also consistent with other information obtained throughout the course of this investigation, as LAWRENCE had previously stated to your Affiant that JOHNSON will primarily utilize his cellphone to arrange drug deals at predetermined locations.

17. The aforementioned activity, specifically JOHNSON's use of a cellular device during such activity, was also observed at times when your Affiant was not receiving GPS location information for TT1, and the wireless provider for TT1 confirmed the device associated with TT1 to either be turned off or the account for TT1 to be inactive. Furthermore, since February 3, 2019, information obtained from the wireless provider for TT1 has indicated that TT1 is inactive. Your Affiant has also not received GPS location information for TT1 since February 3, 2019. Despite the inactivity on the account associated with TT1, your Affiant, while conducting surveillance on JOHNSON since February 3, 2019, has continued to witness activity conducted by JOHSNON as detailed in Paragraph 16 of this affidavit, to include the use of a cellular device during such activity.

18. Due to such observations, a review was conducted of historical call logs obtained via subpoena for the most frequently contacted numbers for TT1. During a review of the records, telephone number 423-580-3890 (hereinafter TT2 or Target Cell Phone) was identified as a current telephone number for JOHNSON. According to subscriber information obtained via subpoena, TT2 is registered in JOHNSON's name, with JOHNSON as the listed "User" for TT2. Historical records analysis for several of the most frequently contacted numbers for TT2 is also consistent with historical call logs for TT1. Such information was confirmed by analysis conducted by your Affiant with information provided by the wireless providers for TT1 and TT2 to the Drug Enforcement Administration (DEA) Chattanooga Field Office. Specifically,

9

during the review periods for TT1 and TT2, telephone numbers for at least two identified female associates of JOHNSON's in this investigation, communicated with TT1 a total of 279 times and TT2 879 times for one of the female associates, and 174 times with TT1 and 110 times with TT2 for the second female associate. Furthermore, the communication with the female associates with TT2 began on the day of activation of the account under JOHNSON's name for one associate, and just four days after activation of the account for TT2 under JOHNSON's name for the second associate. Those associates' communication with TT1 also concluded on the day after activation for TT2 for one associate, and the day of activation for the second associate.

19. Furthermore, throughout the investigation, law enforcement has identified multiple telephone numbers frequently contacting TT1 and TT2 that have been confirmed to be currently used by known narcotics traffickers, to include several identified co-conspirators as part of this investigation. The frequency of contact between such telephone numbers and TT1 is also consistent with the frequency of contact of those numbers with TT2. Specifically, during a three-day period in January 2019, TT1 contacted a telephone number identified as belonging to Aaron JOHNSON, AKA "Big Baby," (hereinafter A. JOHNSON) 42 times. A. JOHNSON's number was provided to your Affiant by the Tennessee Bureau of Investigation (TBI), and identified as a number used by A. JOHNSON to conduct narcotics-related business. During a 14-day period in January 2019, to include several overlapping days with the review period for TT1, TT2 communicated with A. JOHNSON's telephone number 198 times. Furthermore, communication between A. JOHNSON and TT1 ceased two days after the activation date for TT2. A. JOHNSON has been identified as a suspected co-conspirator of JOHNSON's in this investigation. A. JOHNSON also has felony convictions for narcotics distribution in the state

10

of TN and is currently on State Probation in TN for those offenses. During a 13-day period in January 2019, TT1 communicated with a telephone number identified as belonging to Tyrone TOLIVER 47 times. During a six-day period in January 2019, to include several overlapping days during the review period for TT1, TT2 communicated with TOLIVER's telephone number 56 times. Furthermore, communication between TOLIVER and TT1 ceased two days after the activation date for TT2, while communication between TOLIVER and TT2 began on the activation of JOHNSON's account for TT2. During the times TOLIVER communicated with TT1 and TT2, your Affiant, while conducting surveillance at a residence known to be associated with TOLIVER, observed JOHNSON at that location, as well. According to information provided by Officer Casey Patterson with the Athens Police Department (APD), as well as information provided by Special Agent Cameron Cordell with the 10th Judicial Drug Task Force (DTF), TOLIVER is currently involved in the distribution of narcotics, to include methamphetamine, throughout the Athens, TN area. Furthermore, the residence JOHNSON was observed at by your Affiant that is known to be associated with TOLIVER has also been the subject of recent narcotics-related complaints received by the 10th DTF.

20. Your Affiant knows, through training and experience, that drug dealers, especially those involved in the distribution of large quantities of narcotics, will frequently utilize various cellular devices to conduct their business. Your Affiant also knows that it is not uncommon for narcotics traffickers to rotate, or change, cellular devices or cellular numbers on a frequent basis. Such activity is conducted in an attempt to avoid identification or apprehension by law enforcement.

21. Based on the above information, to include communication between TT2 and known associates of JOHNSON's, as well as communication between TT2 and known narcotics

11

traffickers, to include suspected co-conspirators in this investigation, your Affiant submits that TT2 is JOHNSON's current telephone number, and that JOHNSON is utilizing TT2 to facilitate narcotics trafficking.

22. Your Affiant is aware that most individuals today carry their cellular telephones when traveling. Allowing law enforcement officers to track the movements of the Target Cell Phone will aid agents in gathering information regarding the federal crime(s) listed above. Furthermore, your Affiant submits that probable cause exists to allow tracking of the Target Cell Phone for at least the next thirty days, as the above information indicates that JOHNSON is involved in the ongoing distribution of meth over TT2.

23. In your Affiant's training and experience, your Affiant has learned that AT&T is a company that provides cellular telephone access to the general public. Your Affiant also knows that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made

to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

24. In your Affiant's training and experience, your Affiant has learned that AT&T can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on AT&T network or with such other reference points as may be reasonably available.

25. In your Affiant's training and experience, your Affiant has learned that AT&T can collect cell-site data about the Target Cell Phone.

## AUTHORIZATION REQUEST

26. Based on the foregoing, your Affiant requests that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

27. Your Affiant further requests, pursuant to 18 U.S.C. § 2705, that the Court issue an order commanding the provider named herein not to notify any other person of the existence of this warrant for a period of 90 days from the date of this application. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.

28. Your Affiant further requests that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. Affiant also requests that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the

13

information described in Attachment B unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

29. Your Affiant further requests that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

30. Your Affiant further requests that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Adam Baldwin
Special Agent, ATF

Subscribed and sworn to before me on this 20th day of February, 2019

_____
Susan K. Lee
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE WITH ASSIGNED CALL NUMBER 423-580-3890 (TT2) | Case No. 1:19-mj-28 <br><br> **Filed Under Seal** |

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone with assigned call number 423-580-3890 (the Target Cell Phone), whose wireless service provider is AT&T.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of AT&T.

1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE WITH ASSIGNED CALL NUMBER 423-580-3890 (TT2) | Case No. 1:19-mj-28<br><br>**Filed Under Seal** |

## ATTACHMENT B

### Particular Things to be Seized

1. All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

2. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

1

3. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).